# In the United States Court of Federal Claims

No. 16-826L
(Filed: November 29, 2016)

| | |
|---|---|
| * * * * * * * * * * * * * * * * <br> MINISTERIO ROCA SOLIDA, <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, <br><br> Defendant. <br> * * * * * * * * * * * * * * * * | Keywords: Takings Clause; Due Process Clause; 28 U.S.C. § 1500; Subject Matter Jurisdiction |

*Joseph Francis Becker*, NPRI Center for Justice and Constitutional Litigation, Reno, NV, for Plaintiff.

*Davene D. Walker*, Trial Attorney, Natural Resources Section, United States Department of Justice, Washington, DC, with whom was *John C. Cruden*, Assistant Attorney General, Environment and Natural Resources Division, for Defendant.

## OPINION AND ORDER

**KAPLAN, Judge.**

      This suit, brought by Plaintiff Ministerio Roca Solida ("Solid Rock Ministry" or "Solid Rock"), alleges a taking of property without just compensation in violation of the Fifth Amendment as well as violations of the Fifth Amendment's Due Process Clause. Pending before the Court is the government's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Rules of the Court of Federal Claims. For the reasons set forth below, the government's motion to dismiss is **GRANTED-IN-PART** and **DENIED-IN-PART**.

**BACKGROUND**

**I.     Statement of Facts**[1]

Solid Rock Ministry is a Christian church in Nevada founded in 2006 by Pastor Victor Fuentes, a Cuban refugee. Compl. ¶ 5, ECF No. 1. In November 2006, with donations from parishioners, Solid Rock Ministry purchased a forty-acre parcel of land in Nye County, Nevada for $500,000. Id. Solid Rock made significant improvements to the land, buildings, and infrastructure on the property in order to allow it to operate a church camp ministry. Id.

According to Solid Rock, "[a]ppurtenant to Solid Rock Ministry's forty-acre parcel are vested water rights to a desert spring-fed stream" which has traversed the property since at least 1881. Id. ¶ 6. Solid Rock Ministry used the stream for baptisms and as a source of water for its animals. Id. The stream "also contributed significantly to an atmosphere suitable for religious meditation and fed a recreational pond utilized by attendees of the . . . church camp." Id.

Solid Rock Ministry's forty-acre parcel is situated within the boundaries of the Ash Meadows National Wildlife Refuge. Id. ¶ 5. A unit of the National Wildlife Refuge System, Ash Meadows is managed by the United States Fish and Wildlife Service (FWS). See Ash Meadows National Wildlife Refuge, FWS.gov, http://www.fws.gov/refuge/ash_meadows/ (last visited November 28, 2016).

According to Solid Rock, on or about August 4, 2010, FWS, under the direction of the Ash Meadows Refuge Manager, "completed work on a diversion dam and water diversion project that prevented the water to which Solid Rock Ministry has vested rights from entering the church property but, instead, routed said water completely outside the borders of the church's forty-acre parcel and to the higher elevation side of said property." Compl. ¶ 7. It further alleges that this "water diversion project deprived Solid Rock Ministry of its vested water rights, interfered with its exercise of baptisms and religious prayer and meditation, resulted in the loss of the church camp's recreation pond, and otherwise greatly reduced the utility of the forty-acre parcel." Id. ¶ 8.

Solid Rock further contends that the "water diversion project and its water flow replacement channel was 'engineered' in such a way as not to accommodate precipitation or precipitation runoff." Id. ¶ 9; see also id. ¶ 7 (observing that the "diversion channel was specifically designed and constructed only to accommodate spring flow and without capacity to accommodate precipitation or precipitation runoff in the watershed in which Solid Rock Ministry's [forty-acre parcel] lies"). As a result of the "United States' poorly engineered and inadequately constructed water diversion project," Solid Rock Ministry

---

[1] The facts in this section are based on the allegations in Solid Rock Ministry's complaint, which are assumed to be true for purposes of deciding the government's motion to dismiss.

alleges, its parcel was flooded after it rained on December 23, 2010; October 17, 2015; January 8, 2016; and most recently on July 2, 2016. Id. ¶¶ 9–12.

Solid Rock further claims that the floods have resulted in damage to the land, structure, and animals on the grounds of the church camp. See id. It alleges that with each rainfall, flooding becomes more likely, so that Solid Rock "now finds it highly problematic to make its camp available to groups who have historically used the facilities." Id. ¶ 16. It explains that "[c]ampers are typically dropped off in buses, which then depart the premises and return at the conclusion of camp, thus leaving would-be campers stranded and in danger of harm on the grounds in the event of precipitation and flooding." Id.

In its complaint, Solid Rock also alleges that the federal government committed a variety of other wrongful actions in connection with the project. It claims that the United States has frequently closed access roads to Solid Rock's property as a result of the flooding and has failed to maintain the access roads "despite an agreement with Nye County[,] Nevada so requiring," and that it has "fail[ed] to remove vegetation and trees from access roads to Plaintiff's property; all of which make it difficult or impossible for Solid Rock Ministry's patrons to access Plaintiff's church camp." Id. ¶ 13. Further, it complains that the "water diversion project" was undertaken: 1) "without the requisite Clean Water Act permit from the U.S. Army Corps of Engineers"; 2) in contravention of Nevada law; 3) "pursuant to a Water Impact Statement" submitted to state authorities that was "devoid of any indication that private landowners with vested water rights were situated within the affected area and would be directly impacted and denied access to their vested water rights by the water diversion project"; 4) in violation of the federal government's Finalized Comprehensive Plan and Environmental Impact Statement which required it to "restore the area to its natural historic condition"; and 5) in violation of FEMA requirements. Id. ¶ 15

## II.   Solid Rock's Claims for Relief

In its complaint, Solid Rock asserts three claims for relief. In its first claim for relief, it claims that the government's actions "resulted in an unconstitutional taking of [its] vested water rights." Id. at 6; see also id. ¶ 19. In its second claim for relief, Solid Rock alleges that "due to [the government's] actions, namely an illegal and improperly constructed water diversion project, Plaintiff has now lost the use of its lands due to repetitive flooding and extensive erosion caused by the [government's] water diversion project." Id. ¶ 22. It alleges that these actions resulted in an unconstitutional taking of its real and personal property. Id. at 7. In its third claim for relief, Solid Rock contends that it has been denied due process of law in violation of the Fifth Amendment as a result of the government's actions, which it alleges were arbitrary and capricious and also in violation of state and federal law. Id. ¶ 25.

As remedies, Solid Rock seeks a declaration that the United States has taken its vested water rights and other property (both real and personal) in violation of the U.S. Constitution. Id. at 8. It also seeks an award of compensation in excess of $3 million for the taking of its property. Id. "In lieu of finding and ordering compensation for a total

taking," Solid Rock requests that the Court order the United States to compensate it "for [the] loss of its vested water rights from the date of taking until the present"; that it declare that the United States has violated Solid Rock's due process rights; and that it order the United States "to fully restore the watershed in which Plaintiff's subject property lies to its pre-diversion-project state." Id.

### III.     Prior Proceedings

This is the third lawsuit that Solid Rock has filed concerning the impact of the government's water diversion project on its property. It filed its first suit on August 22, 2012 in the United States District Court for the District of Nevada. See Compl., Ministerio Roca Solida v. United States, No. 12-cv-1488 (D. Nev. Aug. 22, 2012). That suit named the United States, FWS, and the Ash Meadows Wildlife Refuge Manager as defendants. See id. In its complaint, Solid Rock Ministry sought declaratory and injunctive relief for alleged violations of the Due Process Clause and the First Amendment's Free Exercise Clause arising out of the water diversion project. It also sought damages under the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1), and compensation under the Fifth Amendment's Takings Clause. See id. ¶¶ 19–33.

On August 24, 2012, two days after Solid Rock Ministry filed its suit in the district court, it filed a lawsuit in the Court of Federal Claims in order to preserve its right to recover damages in excess of $10,000 against the potential future bar of the Tucker Act's six-year statute of limitations. See Ministerio Roca Solida v. United States, 114 Fed. Cl. 571, 573 (2014), aff'd, 778 F.3d 1351 (Fed. Cir. 2015), cert. denied, 136 S. Ct. 479 (2015). In that lawsuit, like this one, Solid Rock alleged violations of the Takings Clause arising out of the government's water diversion project and sought damages for that uncompensated taking. See id.

This Court dismissed Solid Rock's complaint for lack of jurisdiction based on 28 U.S.C. § 1500. That statute provides that the Court of Federal Claims lacks subject matter jurisdiction "of any claim for or in respect to which the plaintiff . . . has pending in any other court any suit or process against the United States." The Court reasoned that the claims Solid Rock had asserted in the pending district court case were "for or in respect to" the claims Solid Rock sought to pursue in this Court because both lawsuits were "based on substantially the same operative facts." 114 Fed. Cl. at 574 (quoting United States v. Tohono O'Odham Nation, 563 U.S. 307, 317 (2011)). The Court of Appeals affirmed this Court's dismissal of the complaint pursuant to § 1500, and the Supreme Court subsequently denied Solid Rock's petition for certiorari.

Thereafter, on July 8, 2016, the district court entered judgment on behalf of the government defendants with respect to Solid Rock's free exercise claims and dismissed the claims against the Ash Meadows Wildlife Refuge Manager, pursuant to a decision by the Ninth Circuit. In addition, based on an agreement by the parties, it dismissed the remainder of Solid Rock's claims at Solid Rock's request, and without prejudice, pursuant to Fed. R. Civ. P. 41(a)(2). According to Solid Rock, in light of the Supreme Court's denial of certiorari, it "was left with no choice but to voluntarily dismiss claims at the District Court (on which it had survived motions for summary judgment by

4

Defendant) simply so it could vindicate its constitutional right to be free of an uncompensated taking—a takings claim which, due to three additional floods at the hands of defendant United States, has now become the claim on which Plaintiff Solid Rock may and should be made closest to whole." Pl.'s Opp'n to United States' Mot. to Dismiss for Lack of Subject Matter Juris. (Pl.'s Opp'n) at 3, ECF No. 9. Solid Rock filed the present lawsuit four days later, on July 12, 2016.

## DISCUSSION

As noted, the government has moved to dismiss Solid Rock's complaint. It argues that although Solid Rock seeks compensation under its first two claims for relief for takings under the Fifth Amendment, those claims sound in tort because they allege that the actions which resulted in the taking of Solid Rock's water rights and in the flooding of its land were "illegal" and/or negligent. See Def.'s Mot. to Dismiss for Lack of Subject Matter Juris. and Supporting Mem. of Law (Def.'s Mot.) at 7–9, ECF No. 7. With respect to Solid Rock's third claim for relief, the government contends that the Due Process Clause is not money-mandating and that this Court thus lacks jurisdiction over claims alleging violations of that Clause. See Def.'s Mot. at 6–7.

The Court has determined that oral argument on the government's motion is unnecessary. For the reasons set forth below, the Court concludes that it has jurisdiction over the takings claims articulated by Solid Rock in its first two claims for relief. On the other hand, it agrees with the government that Solid Rock's third claim for relief is outside of this Court's jurisdiction. Therefore, the government's motion to dismiss is **DENIED** as to Solid Rock's first two claims for relief, and **GRANTED** as to Solid Rock's third claim for relief.

**I.     Standards for Motion to Dismiss**

Whether this Court has jurisdiction to decide a case is a threshold matter, and, if no jurisdiction exists, the Court must order dismissal without proceeding further. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). "In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." Estes Exp. Lines v. United States, 739 F.3d 689, 692 (Fed. Cir. 2014), citing Cedars–Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583–84 (Fed.Cir.1993). The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed.Cir.1988).

The court may "inquire into jurisdictional facts" to determine whether it has jurisdiction. Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991). It may therefore consider matters outside of the pleadings in ruling on a motion to dismiss pursuant to RCFC 12(b)(1). See Reynolds v. Army and Airforce Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988) (finding that to determine jurisdiction the "court may consider relevant evidence in order to resolve the factual dispute").

## II.   Tucker Act Jurisdiction

The Tucker Act authorizes the Court of Federal Claims to render judgment upon "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a). The Tucker Act waives the sovereign immunity of the United States to allow a suit for money damages, United States v. Mitchell, 463 U.S. 206, 212 (1983), but it does not confer any substantive rights on a plaintiff. United States v. Testan, 424 U.S. 392, 398 (1976). Therefore, a plaintiff seeking to invoke the court's Tucker Act jurisdiction must identify an independent source of a substantive right to money damages from the United States arising out of a contract, statute, regulation or constitutional provision. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008).

Claims for damages under the Takings Clause of the Fifth Amendment are within this Court's Tucker Act jurisdiction. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1309 (Fed. Cir. 2008). "Thus, to the extent the [plaintiff has] a nonfrivolous takings claim founded upon the Fifth Amendment, jurisdiction under the Tucker Act is proper." Moden v. United States, 404 F.3d 1335, 1341 (Fed. Cir. 2005).

## III.   Solid Rock's Taking Claims

In this case, Solid Rock's first two claims for relief allege that the water diversion project that FWS undertook effected a taking of Solid Rock's property in two respects. First, it argues that the government deprived Solid Rock of its water rights when it diverted water from the stream located on Solid Rock's property. Second, it contends that as a result of the project's engineering design, Solid Rock's land has been subjected to repeated flooding.

The government argues that this Court lacks jurisdiction over Solid Rock's first two claims for relief. It claims that "although Plaintiff's claims are styled as Fifth Amendment takings, they are based entirely on allegations of the government's illegal and negligent actions." Def.'s Mot. at 8. It notes that in Ridge Line v. United States, 346 F.3d 1346, 1356 (Fed. Cir. 2003), the Court of Appeals observed that in order to establish a taking, a plaintiff must show that the United States took a compensable property interest as "the direct, natural, or probable result of an authorized activity." Def.'s Mot. at 8; see also Del-Rio Drilling Programs, Inc. v. United States, 146 F.3d 1358, 1362 (Fed. Cir. 1998) (observing that "[a] compensable taking arises only if the government action in question is authorized"). It contends that to the extent that Solid Rock alleges that the actions that resulted in the diversion of the water and the flooding of Solid Rock's property were "illegal," they cannot be considered "authorized" for purposes of invoking the Takings Clause. See Def.'s Mot. at 8–9.

The government's arguments lack merit. As the Court of Appeals has explained, "[i]n holding that ultra vires conduct cannot give rise to a Fifth Amendment taking, the courts have drawn an important distinction between conduct that is 'unauthorized' and

conduct that is authorized but nonetheless unlawful." Del-Rio Drilling, 146 F.3d at 1362. "Merely because a government agent's conduct is unlawful does not mean that it is unauthorized; a government official may act within his authority even if his conduct is later determined to have been contrary to law." Id. Thus, the fact that Solid Rock is contending that the government engaged in illegal conduct in its execution of the water project does not mean that it is also alleging that the project was "unauthorized" for purposes of takings jurisprudence.[2]

Similarly, there is no merit to the government's argument that the claims set forth in Solid Rock's first two claims for relief are not takings claims but instead sound in tort. In Ridge Line, the Court of Appeals observed that:

> The line distinguishing potential physical takings from possible torts is drawn by a two-part inquiry. First, a property loss compensable as a taking only results when the government intends to invade a protected property interest or the asserted invasion is the direct, natural, or probable result of an authorized activity and not the incidental or consequential injury inflicted by the action. Second, the nature and magnitude of the government action must be considered. Even where the effects of the government action are predictable, to constitute a taking, an invasion must appropriate a benefit to the government at the expense of the property owner, or at least preempt the owner[']s right to enjoy his property for an extended period of time, rather than merely inflict an injury that reduces its value.

346 F.3d at 1355 (quotation and citations omitted).

Here, Solid Rock alleges that the government intended to invade its water rights when it initiated its water diversion project. Its allegations also support a claim that the flooding of its land was the "direct, natural, or probable result" of FWS's water diversion project. And it claims that the government's actions have appropriated benefits to the government (in the form of its water diversion project) and have preempted Solid Rock's right to enjoy its property for an extended period of time. Accordingly, even if Solid Rock's allegations regarding the taking of its water rights and the flooding of its land

---

[2] Of course, this Court lacks jurisdiction to address any challenges to the project that are based on violations of state laws or violations of federal laws that are not money-mandating. As the Federal Circuit has ruled, "an uncompensated taking and an unlawful government action constitute 'two separate wrongs [that] give rise to two separate causes of action.'" Rith Energy, Inc. v. United States, 247 F.3d 1355, 1365 (Fed. Cir. 2001) (alteration in original) (quoting Del Rio Drilling, 146 F.3d at 1364; see also Lion Raisins, Inc. v. United States, 416 F.3d 1356, 1369–70 (Fed. Cir. 2005) (distinguishing "between the valid exercise of the Court of Federal Claim's [sic] jurisdiction over a takings claim when the claim was that 'property was taken regardless of whether the agency acted consistently with its statutory and regulatory mandate' and the bar to such jurisdiction when 'the plaintiff claims it is entitled to prevail because the agency acted in violation of statute or regulation'" (quoting Rith, 247 F.3d at 1366))).

7

could also give rise to tort claims, that does not prevent Solid Rock from seeking compensation under a takings theory. See Hansen v. United States, 65 Fed. Cl. 76, 80–81 (2005) (observing that "it is not fatal to a plaintiff's claim or this court's jurisdiction if the government alleges that the facts might give rise to a tort" and that "so long as there is some material evidence in the record that establishes the predicates for a traditional takings claim, including an unreasonable interference of a property interest by the government that is both substantial and continuous, a showing of legal (or 'proximate') causation, and the existence of at least broad authorization for the governmental acts involved, a plaintiff succeeds in demonstrating subject matter jurisdiction in this court based on the Tucker Act and the Taking Clause of the Fifth Amendment").

### IV.  Solid Rock's Due Process Claim

Solid Rock's third claim for relief is that it has been denied due process of law in violation of the Fifth Amendment as a result of the government's actions, which it alleges were arbitrary and capricious and also in violation of state and federal law. See Compl. ¶ 25. Because the Due Process Clause, however, is not a money-mandating constitutional provision, this Court lacks jurisdiction under the Tucker Act to consider claims based on that Clause. Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997); LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995).

Solid Rock argues that the Court should nonetheless deny the government's motion to dismiss its due process claim because by virtue of the operation of 28 U.S.C. § 1500, in conjunction with the Tucker Act's six-year statute of limitations, 28 U.S.C. § 2501, it was required to abandon the pursuit of its due process and related claims in district court to preserve its right to bring its takings claims to this Court. As Solid Rock notes, in his concurring opinion in Ministerio Roca Solida v. United States, Judge Taranto observed that "a substantial constitutional question would be raised if federal statutes forced a claimant to choose between securing judicial just compensation for a taking of property and pursuing constitutional and other legal claims that challenge, and if successful could reverse, the underlying action alleged to constitute a taking." 778 F.3d at 1360.

The Court appreciates the considerations and concerns raised by Solid Rock and discussed in Judge Taranto's opinion. These considerations do not, however, supply a basis for the Court to adjudicate claims that are not within its statutory jurisdiction. Indeed, in his concurring opinion, Judge Taranto suggested a number of potential (albeit highly problematic and uncertain) avenues that might enable Solid Rock to pursue its other claims (including its due process claim) without abandoning its takings claim. See 778 F.3d at 1357–58, 1362–64.[3] Notably, having this Court exercise jurisdiction over

---

[3] Judge Taranto summarized Solid Rock's options as follows:

> One possibility, highly problematic but not foreclosed by today's decision, is invocation of the transfer statute, 28 U.S.C. § 1631, to transfer to the Court of Federal Claims (when the § 1500 bar ends) the takings claim Roca Solida timely filed in the district court, a claim broad enough to encompass

8

Solid Rock's due process claims (notwithstanding its lack of a statutory basis for doing so) was not among the alternatives Judge Taranto suggested. See id. Accordingly, and for the reasons set forth above, the Court is obliged to dismiss Solid Rock's third claim for relief for lack of jurisdiction.

## CONCLUSION

For the reasons set forth above, the government's motion to dismiss is **GRANTED-IN-PART** and **DENIED-IN-PART**, and Solid Rock's third claim for relief is **DISMISSED** without prejudice.

**IT IS SO ORDERED.**

s/Elaine D. Kaplan<br>
ELAINE D. KAPLAN<br>
Judge, U.S. Court of Federal Claims

---

Roca Solida's full claim for just compensation for a permanent or temporary taking. If a full just-compensation remedy is statutorily unavailable, the district court may be entitled to adjudicate the permanent-taking claim and order return of the property if it finds a taking. And if restorative relief is incomplete, as by leaving a temporary taking uncompensated, questions would arise about whether tolling of the statute of limitations might be recognized to avoid unconstitutionality or whether the combination of remedy-depriving statutes is unconstitutional as applied.

778 F.3d at 1357–58; see also id. at 1363–64 (describing potential obstacles to suggested options).